UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARK S. SHELDON,

    Plaintiff,

v.                                                                       Case No: 8:15-cv-1831-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Clark S. Sheldon, seeks judicial review of the denial of his claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A. Procedural Background

Plaintiff filed an application for supplemental security income on April 11, 2012. (Tr. 12.) The Commissioner denied Plaintiff's claim initially on July 12, 2012. (Tr. 12.) Plaintiff then requested an administrative hearing. (Tr. 12.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 12.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr. 9–26.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–5, 7–8.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B. Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1962, claimed disability beginning on December 1, 2010. (Tr. 12, 20.) Plaintiff has a ninth-grade education. (Tr. 17.) Plaintiff has no past relevant work experience. (Tr. 20.) Plaintiff alleged disability due to depression and bipolar disorder. (Tr. 174.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 11, 2012, the application date. (Tr. 14.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, bipolar disorder, alcohol dependence, and borderline intellectual functioning. (Tr. 14.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to perform simple, routine, repetitive tasks; able to understand, remember, and carry out simple instructions; able to adapt to gradual changes in the work setting; and limited to work that requires occasional interaction with crowds, the public, and co-workers. (Tr. 17.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 17.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 20.) However, given Plaintiff's background and RFC, the vocational expert ("VE") testified that

Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an industrial cleaner and dining room attendant. (Tr. 21.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 21–22.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled or not disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in

the national economy in view of the claimant's age, education, and work experience. *Id.* A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's RFC and hypothetical to the VE are not supported by substantial evidence; and (2) the ALJ failed to properly

consider the opinions of the state agency psychologists. For the reasons that follow, these contentions do not warrant reversal.

**A.  Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC finding and hypothetical question posed to the VE do not accurately account for the severity of Plaintiff's mental impairments. In his decision, the ALJ limited Plaintiff to no more than occasional interaction with crowds, the public, and co-workers. (Tr. 17, 20.) Plaintiff argues that the ALJ failed to address the level of contact Plaintiff could have with supervisors. Plaintiff further argues that the ALJ erred in determining that Plaintiff could have "no more than occasional" interaction with others instead of "minimal" or "less than occasional" contact with others.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is defined as the most a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). Therefore, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See* 20 C.F.R. § 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment). Further, while the ALJ should consider medical opinions regarding a claimant's ability to work in forming the RFC, the medical opinions are distinct from the RFC assessment. *Id.* §§ 404.1513(b), (c), 404.1527, 404.1545, 416.913(b), (c), 416.927, 416.945. Specifically, a claimant's RFC is a matter reserved for the ALJ's determination,

and while a physician's opinion on the matter will be considered, it is not dispositive. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because the ALJ failed to address the level of contact Plaintiff could have with supervisors. A review of the record, however, reflects only two references to Plaintiff's interaction with supervisors, namely Plaintiff's altercation with a former employer and his statement in a treatment record that he has always had significant problems getting along with his co-workers, supervisors, and subordinates. (Tr. 259, 313.) In contrast, Plaintiff reported having a fair relationship with employers, supervisors, and co-workers. (Tr. 272.) Upon reviewing the record, state agency psychologist Dr. James Spence opined that Plaintiff was only moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 51.) As such, there is no indication that Plaintiff's limitation in interacting with supervisors warranted a more severe limitation. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 879 (11th Cir. 2013) ("[A]n ALJ is not required to instruct the VE to assume conditions that he does not find to exist."). Therefore, the ALJ did not err in failing to adopt a specific limitation regarding interaction with supervisors.

Nevertheless, although the ALJ did not specifically include a limitation regarding the level of interaction with supervisors, the ALJ's hypothetical and RFC sufficiently accounts for Plaintiff's moderate limitations in social functioning by limiting Plaintiff to no more than occasional interaction with crowds, the public, and co-workers. (Tr. 17, 20.) *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (providing that the ALJ's hypothetical question need not include "each and every symptom of the claimant," but must include "all of the claimant's impairments"). Other than Plaintiff's reports of anxiety in large crowds and social withdrawal, there is no indication that Plaintiff was more than moderately

limited in social interaction.  In discussing Plaintiff's social functioning, the ALJ referenced Plaintiff's interactions with family, friends, and his girlfriend, as well as Plaintiff's ability to perform daily activities involving others and live in a men's facility with about 100 men.  (Tr. 32.)  The ALJ further referenced Plaintiff's group therapy notes, which described Plaintiff as attentive, engaging, and interested.  (Tr. 19, 329, 333, 340, 341.)

The ALJ's findings are supported by the record, which indicates that Plaintiff socially interacted with others but preferred to isolate himself from others.  Specifically, Plaintiff reported having at least two friends, maintaining an intimate relationship with his girlfriend, and interacting well with others, including co-workers and employers.  (Tr. 32–33, 206, 259, 265, 374.)  He reported difficulty with interpersonal relationships, but he did not indicate lacking friends and social outlets as an obstacle to his recovery.  (Tr. 286.)  Although he reported that he tends to isolate himself and sometimes experiences anxiety in large crowds, he explained that his depression and anxiety have caused him to lack motivation to meet new people.  (Tr. 203, 207, 319, 322, 387.)  State agency psychologist Dr. Thomas J. Spencer reported that Plaintiff "noted some anxiety in public." (Tr. 312.)  Plaintiff further reported becoming easily short-tempered and irritable, but he reported doing better with medication, including feeling less irritable and having more control over his moods, and exhibited normal behavior in examinations.  (Tr. 36, 207, 251, 283, 296, 298, 307, 313, 349, 351, 365, 369, 373, 374, 378, 387, 395, 398.)  He denied social phobia or mood swings on several occasions.  (Tr. 293, 298, 324, 378, 383.)  A mental health assessment conducted in 2012 indicates only moderate functional impairments in social network, noting that Plaintiff gets along with friends, neighbors, co-workers, and other peers.  (Tr. 283–284.)  Dr. Spence opined that Plaintiff demonstrated only moderate difficulties in maintaining social functioning.  (Tr. 49.)

Further, some of the limitations that the ALJ found would also apply to Plaintiff's interaction with supervisors. Specifically, the ALJ found that Plaintiff is limited to simple, routine, repetitive tasks and no more than occasional interaction with crowds, the public, and co-workers. (Tr. 17, 20.) *See Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) ("Although [the ALJ] did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, his RFC finding [limiting the claimant to work with simple instructions and no more than limited public contact] was not inconsistent with this."). Similarly, in the hypothetical question posed to the VE, the ALJ included a limitation to simple, routine, repetitive tasks; ability to understand, remember, and carry out simple instructions; ability to adapt to gradual changes in the work setting; and limitation to work that requires occasional interaction with crowds, the public, and co-workers. (Tr. 38–39.) This sufficiently accounts for Dr. Spence's opinion that Plaintiff have only minimal contact with others and Dr. Spencer's opinion that Plaintiff is limited in his ability to adapt to change in the workplace. (Tr. 53, 314.) *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 843 (11th Cir. 2013) ("While the ALJ's RFC assessment and hypothetical to the VE did not use the same language as [the treating physician], they both accounted for such limitations.").

Upon questioning by Plaintiff's attorney regarding Plaintiff's social anxiety and limitation in his ability to adapt to changes in the workplace, the VE testified that the positions he identified are occupations that are structured, present limited changes in the work setting, and require only limited interactions with co-workers and others. (Tr. 40–41.) Upon further questioning by Plaintiff's attorney regarding Plaintiff's difficulty dealing with co-workers and supervisors based on anger or hostility, the VE testified that, in some settings, angry interactions are tolerated to some extent and are part of the work culture, as long as the interactions are not physical in nature.

*See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (finding that the ALJ's failure to include a driving limitation in the hypothetical posed to the VE was harmless when the functional requirements of the jobs identified by the VE did not appear to involve driving). Therefore, the ALJ did not err in relying on the VE's response to the hypothetical question in determining Plaintiff's RFC, as the hypothetical adequately accounted for Plaintiff's limitations in social functioning.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that "hypothetical questions adequately account for a claimant's limitations . . . when the questions otherwise implicitly account for [the] limitations"); *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 315 (11th Cir. 2007) (finding that the plaintiff's "additional claimed impairments that were not supported by objective medical evidence did not need to be included in the hypothetical").

In light of the above, the Court finds that the ALJ did not err in failing to specifically include in the RFC that Plaintiff was limited in his ability to interact with supervisors.  Further, even if the ALJ erred by not specifically including this limitation in his RFC finding, the error was harmless because the ALJ included sufficiently related limitations to encompass Plaintiff's limitations in his ability to interact with supervisors and his moderate limitations in social functioning.  *See Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 625 (11th Cir. 2012) (finding that although the ALJ did not expressly include all of the plaintiff's conditions, the RFC adequately accounted for the limitations imposed by the plaintiff's condition); *Ehrisman v. Astrue*, 377 F. App'x 917, 920 (11th Cir. 2010) ("Although the ALJ did not specifically include the findings as to [the claimant's] mental limitations in the statement of her RFC, any error to this extent is harmless since the ALJ's decision indicated that its conclusions were based on consideration of both her physical and mental impairments.").

### B. Medical Opinions

Plaintiff argues that the ALJ failed to properly consider the opinions of two state agency psychologists: examining consultative psychologist Dr. Thomas J. Spencer and non-examining consultative psychologist Dr. James Spence. Specifically, Plaintiff argues that their opinions support more severe limitations in social functioning than imposed by the ALJ in his RFC finding, as argued in Plaintiff's first issue addressed above.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179. The ALJ must consider the findings and opinions of non-examining state agency medical consultants, who are considered experts in the context of Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The weight afforded to the opinions of state agency medical physicians varies, however, depending on the extent to which the findings are supported by clinical findings and are consistent with other evidence. *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011).

Generally, the opinions of a non-treating or non-examining physician are given less weight than those of examining or treating physicians and, standing alone, do not constitute substantial evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009). Further, the ALJ need not defer to the opinion of a physician who conducted a single examination and who was not a treating physician. *Stone*, 544 F. App'x at 842. Indeed, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Additionally, an opinion on a claimant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources. 20 C.F.R. § 404.1527(e)(2). Therefore, "[a] doctor's opinion on dispositive issues reserved to the Commissioner . . . is excluded

from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011).

In this case, Dr. Spencer performed a psychological evaluation of Plaintiff in June 2012. (Tr. 311–314.) In his report, Dr. Spencer opined that Plaintiff retains the ability to understand and remember simple instructions and engage in and persist with simple tasks. (Tr. 314.) He further opined that Plaintiff demonstrated moderate to marked impairment in his ability to interact socially and in his ability to adapt to change in the workplace. (Tr. 314.) In July 2012, Dr. Spence reviewed the evidence and completed a mental RFC assessment of Plaintiff. (Tr. 45–54.) In his assessment, Dr. Spence opined that Plaintiff is capable of performing simple, repetitive tasks on a sustained basis in an environment that requires only minimal contact with others. (Tr. 52–53.)

In evaluating the opinion evidence, the ALJ summarized Dr. Spencer's and Dr. Spence's opinions and gave significant weight to their opinions. However, the ALJ did not adopt Dr. Spencer's opinion that Plaintiff had moderate to marked limitation in social functioning, finding that the opinion was likely based on Plaintiff's own reports of aggressive behavior toward others and was inconsistent with the remainder of the record, which did not support a marked limitation in this area. (Tr. 20.) *See Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 788 (11th Cir. 2015) (affirming the ALJ's decision to give less weight to an opinion that was, among other things, based on the claimant's self-reports of symptoms); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (affirming the ALJ's decision to give less weight to an opinion that was based largely on the claimant's subjective complaints, which were not entirely credible). The ALJ further found that the record showed that Plaintiff improved significantly with medication. (Tr. 18, 20.)

Upon consideration of all the evidence, the ALJ found that Plaintiff "is able to interact well with others on a limited basis," "is limited to simple tasks with no more than occasional public interaction," and "is able to adapt to gradual changes in the work setting," as described in the RFC. (Tr. 17, 20.) In making this finding, the ALJ considered the opinions of Dr. Spencer and Dr. Spence, and he discussed Plaintiff's difficulties in social functioning throughout his decision. (Tr. 15, 19–20.) Indeed, the ALJ's finding of moderate difficulties in social functioning is directly consistent with Dr. Spence's finding of moderate limitations in social functioning, and his opinion that Plaintiff retained the ability to carry out very short and simple tasks, sustain an ordinary routine without special supervision, make simple work-related decisions, and maintain socially appropriate behavior. (Tr. 51–52.) It is also consistent with Dr. Spence's opinion that Plaintiff was only moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (Tr. 51–52.) Further, as noted by the ALJ, Plaintiff reported doing better with medication, including feeling less irritable and having more control over his moods. (Tr. 307.)

Therefore, the ALJ properly considered Dr. Spencer's and Dr. Spence's opinions in formulating Plaintiff's RFC, and the limitations are consistent with their opinions and the record as a whole. Specifically, the record consistently indicates only moderate limitation in social functioning and ability to interact with others. Notably, Dr. Spencer's opinion of a "moderate to marked" impairment in social functioning is the only opinion in the record that indicates more than moderate impairment in this domain. Further, as discussed above, the ALJ's RFC finding sufficiently accounts for Plaintiff's difficulties in social functioning—namely the limitations

regarding adapting to changes in the work setting found by Dr. Spencer and the limitation to minimal contact with others found by Dr. Spence—by limiting Plaintiff to simple tasks and no more than occasional interaction with others and gradual changes in the work setting. Therefore, the ALJ properly adopted Dr. Spencer's and Dr. Spence's opinions to the extent that their opinions were consistent with the record, and he clearly explained how certain portions of the opinions were inconsistent with the record as a whole. In light of the above, the ALJ did not err in considering the opinions of Dr. Spencer and Dr. Spence, and the ALJ's RFC finding and hypothetical posed to the VE sufficiently account for Plaintiff's limitations in social functioning.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on August 3, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record